Commonwealth *vs.* Stephen B. Myers.

Suffolk.    October 6, 1969. — October 30, 1969.

Present: Wilkins, C.J., Spalding, Cutter, Kirk, Spiegel, & Reardon, JJ.

*Practice, Criminal,* Appeal, Capital case, New trial, Nolle prosequi, Charge to jury. *Evidence,* Admissions and confessions. *Pleading, Criminal,* Indictment. *Homicide. Assault.*

Where an indictment was returned for murder in the first degree and the Commonwealth moved for trial on only so much of the indictment as charged murder in the second degree, the defendant's trial on that charge was not "a capital case" within the purview of G. L. c. 278, § 33E, as amended by St. 1962, c. 453. [346–347]

Upon an appeal from the conviction of a defendant of murder by stabbing, it was held that there was no substantial risk of a miscarriage of justice, and a new trial was not required, by reason of testimony of the principal eyewitness to the stabbing, introduced without objection or exception, that in a probable cause hearing she had testified that she knew nothing about the stabbing, and that she had so testified because she had been threatened by the defendant's girl friend, where it appeared

---

that, although there was no evidence that the defendant had procured
or was responsible for the threats, neither the judge nor the prosecutor
at any time suggested to the jury that the threats were in any way
attributable to or authorized by the defendant. [347]

Where it appeared at a trial for murder by stabbing that the judge in his
charge said that it was "not disputed" that a witness at the trial who
had testified at a probable cause hearing had at that hearing changed
her testimony from a statement that she knew nothing about the
crime to a statement, similar to testimony she gave at the trial, that
she saw the defendant stab the victim, and that the defendant's coun-
sel objected to the charge on the ground that he had never agreed that
the witness had changed her testimony at the hearing but the judge
refused to alter the charge, it was held that, even assuming that counsel
did not so agree, the only relevance of the matter was on the witness'
credibility, that the judge's remark did not constitute an indorse-
ment thereof, and that the judge did not charge "with respect to
matters of fact" in violation of G. L. c. 231, § 81. [348–349]

A statement, "I got some sucker," spoken to a bystander by the defen-
dant in an indictment for murder as he walked away unrestrained from
the scene of a stabbing, was admissible in evidence at the defendant's
trial without compliance with the established practice with respect to
the holding of a preliminary hearing in the absence of the jury on the
voluntariness of a confession. [349]

At the trial of an indictment for murder at which there is evidence of an
assault and battery on the victim by the defendant, there must be an
instruction on assault and battery if, but only if, the evidence raises a
reasonable doubt whether the acts of the defendant caused the vic-
tim's death. [350]

At the trial of an indictment for murder containing an allegation of as-
sault and battery on the victim by the defendant, there was no error
in the judge's refusal to charge that the defendant could be found
guilty of assault and battery where there was uncontradicted testi-
mony establishing that the victim's death was a direct result of stab
wounds, testimony by an eyewitness describing the stabbing of the
victim by the defendant, testimony by another eyewitness consistent
with such description, and circumstantial evidence indicating a fatal
stabbing rather than a battery. [350–351]

INDICTMENT found and returned in the Superior Court on
June 26, 1968.

The case was tried before *Lurie,* J.

*Owen Gallagher* for the defendant.

*Alan Chapman,* Assistant District Attorney, for the Com-
monwealth.

SPALDING, J. On an indictment charging the defendant
with murder in the first degree, the Commonwealth moved
for trial on so much of it as charged murder in the second

degree. Convicted of murder in the second degree, the defendant appealed. G. L. c. 278, §§ 33A–33G.

We shall state only so much of the evidence as will furnish a background for the questions presented. On the evening of March 30, 1968, there was a dance in the recreation hall of St. Hugh's Church in Roxbury. Attending the dance, among others, were Florette Johnson, Stephen Myers, and the victim of the homicide, Stephen Dunning. Around 10:30 P.M., after dancing with the defendant, Miss Johnson saw him go up to a table where Dunning was sitting, and she followed. When she approached the table she heard the defendant say that Dunning had done something to him a long time ago, and he was going to kill him. Dunning told the defendant to leave him alone. Myers thereupon took a switchblade knife "from . . . [his] side" and flipped it open. At this point Dunning had got up and started moving backwards in an effort to get away. The defendant then, according to Miss Johnson, stabbed Dunning twice in the chest. Immediately before the stabbing, Miss Johnson called out to the defendant, "Don't, Stephen."

Someone then pulled the defendant away from Dunning, saying, "The police are out front, let's go out the back," and Myers then walked toward the rear exit with the person who had made the remark. As the defendant was leaving the hall he passed a group of boys who were discussing the incident and he overheard one of them ask who had done the stabbing, and he replied, "I got some sucker."

After the stabbing, Dunning was seen walking backwards toward the stairs leading to the street. He was next seen coming out the front door. After telling an acquaintance that he had been stabbed, he fell to the ground. Dunning was taken to a hospital, where, two weeks later, he died. The cause of death was total destruction of the brain due to lack of oxygen, which was the result of the bleeding, caused by the stab wounds, in the area of the heart.

On May 18, 1968, Myers was arrested by two police officers. At first he denied he was Stephen Myers and gave a false name. Shortly thereafter he revealed his true name

and said, "I know I am wanted for murder, but I didn't do it." He was thereupon arrested.

1. Florette Johnson, the principal eyewitness to the stabbing, was permitted to testify that in the probable cause hearing in the District Court she had testified that she did not know anything about the stabbing; and that she so testified because she had been threatened by one Sissy Richardson, the defendant's girl friend.

This testimony, which is the subject of assignment of error No. 1, is challenged on the ground that this was prejudicial because there was no evidence tending to prove that the defendant had procured or was responsible for the alleged threats. See *Commonwealth* v. *Min Sing*, 202 Mass. 121, 127.

This evidence was introduced without objection or exception. In a case tried subject to G. L. c. 278, §§ 33A–33G, an assignment of error not based on an exception brings nothing to this court for review. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336. *Commonwealth* v. *Polian*, 288 Mass. 494, 496–497. *Commonwealth* v. *Chester*, 337 Mass. 702, 703. A broader power of review is conferred on this court in a capital case by § 33E, as amended by St. 1962, c. 453, which reads in part: "In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence . . . [and] the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt." For the purpose of such review, "a capital case shall mean a case in which the defendant was *tried* on an indictment for murder in the first degree and was convicted of murder in either the first or second degree" (emphasis supplied). The present case does not come within the provisions of § 33E. When the Commonwealth moved for trial on only so much of the indictment as charged murder in the second degree, the case ceased to be a capital case within the pur-

view of § 33E, for the defendant was not being "tried on an indictment for murder in the first degree."[1] We are mindful that, apart from § 33E, this court "in appropriate instances . . . has and will exercise the power to set aside a verdict or finding in order to prevent a miscarriage of justice when a decisive matter has not been raised at the trial." *Commonwealth* v. *Conroy*, 333 Mass. 751, 757. This power has been sparingly used. "The test is whether there is a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 564. We are of the opinion that there was no such substantial risk here. Neither the judge nor the prosecutor at any time suggested to the jury that Miss Richardson's threat to Miss Johnson to induce false testimony at the probable cause hearing was in any way attributable to or authorized by the defendant. See *Commonwealth* v. *Min Sing*, 202 Mass. 121, 127. The evidence was undoubtedly introduced to explain why Miss Johnson's version at the probable cause hearing differed from her testimony at the trial. We need not decide what our holding on the admissibility of this evidence would be had the point been properly saved. For present purposes, it is enough to say that if there was error it was not of the sort to justify a new trial.

2. With respect to Miss Johnson's testimony, discussed above, the judge in his charge said, "It is also not disputed that the witness Florette Johnson . . . at the proceedings in the Roxbury Municipal Court . . . testified that she had been threatened; and that later at the hearing in . . . [that court] she gave the same testimony that she gave before you in the present trial." The defendant objected to this portion of the charge, asserting that he had never agreed that Miss Johnson had changed her testimony in the District

---

[1] Instead of moving for trial on so much of the indictment as charged murder in the second degree, it would have been more appropriate if the prosecutor had filed a nolle prosequi with respect to the first degree charge. But what was done was in effect a nolle prosequi and we treat it as such. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 571–572. There the prosecutor filed a so called "disclaimer" stating that he sought a conviction for manslaughter rather than for murder in either degree and it was held that, although irregular, this was the equivalent of a nolle prosequi.

Court. The judge refused to alter the charge. The defendant excepted, and this exception is the subject of his seventh assignment of error.

The testimony of Miss Johnson as to what occurred in the District Court is somewhat confused. In substance it amounted to this. She testified twice in the District Court. At some stage she testified that she had been threatened. She also stated that she changed her testimony at the District Court hearings. When she first testified there, she said that she "didn't know anything." When she testified the second time she "told them the truth." At the close of Miss Johnson's testimony on this subject in the Superior Court, it was unclear whether her denial of knowledge was made the first or second time she testified. At this point the following occurred. Counsel for the defendant directed Miss Johnson's attention to the following question put to her by the prosecuting officer in the District Court: "Do you remember telling me down at headquarters that you saw him stab him with a knife twice, with his hand?" A. "I said, I didn't know." Q. "And that was the second time you took the stand, is that it?" A. "The first." THE COURT: "Well, do you agree it was the first time, Mr. Wier?" COUNSEL FOR THE DEFENDANT: "I think she is correct on that, Your Honor. That was the first time." THE COURT: "It is agreed that this was the first time." COUNSEL FOR THE DEFENDANT: "This was the first time, Your Honor." THE COURT: "All right." Counsel for the defence then started on another line of questioning.

The colloquy just recited permits the inference that the defendant's counsel agreed that Miss Johnson had changed her story. And since he did not pursue her answer, "I told . . . the truth," the inference is permissible that he conceded that her testimony was in substance the same as in the Superior Court. Thus the judge could have concluded that his statement of what had occurred at the probable cause hearing was in effect agreed to by defence counsel.

But assuming that these were disputed facts, it does not appear that they were material. The only issue on which

they were relevant at all was Miss Johnson's credibility. Contrary to the defendant's contention, we do not interpret the judge's remarks as an indorsement of Miss Johnson's credibility. Immediately following the challenged portion of the charge the judge told the jury, "At this trial the truth of the testimony of Florette Johnson is for you to determine; and it is entirely for you." We are of opinion that there was no violation of G. L. c. 231, § 81, which forbids courts to charge "with respect to matters of fact."

3. As stated above, shortly after the stabbing the defendant was asked by one of the bystanders in the dance hall who had done the stabbing and he replied, "I got some sucker." The judge charged the jury that it was for them to "determine whether such a reply, if . . . [they] found it was given, was a confession by Myers, a direct acknowledgement of his guilt." No objection or exception was taken to this portion of the charge, which is the subject of his sixth assignment of error. For reasons set forth in part 1 of this opinion the point is not before us. We might add that even if this question were properly before us there is nothing in it. The defendant's remark was plainly voluntary and was not the result of any custodial interrogation. Thus there was no need, contrary to the defendant's contention, for the judge to make a preliminary finding that the statement was voluntary and to submit the ultimate question of its voluntariness to the jury under the principles set forth in *Commonwealth* v. *Marshall,* 338 Mass. 460, 461. The judge adequately explained the difference between a confession and an admission. The defendant takes nothing by this assignment.

4. The judge instructed the jury that there were only two possible verdicts: (1) guilty of murder in the second degree or (2) not guilty. The defendant requested an instruction that the jury could find him guilty of the lesser included offence of assault and battery. The judge refused this request, subject to the defendant's exception. Assignment of error No. 5.

Whether assault and battery is a lesser included offence

of which a defendant may be convicted under an indictment for murder is a question which appears not to have been discussed by this court. There is, however, an intimation in *Commonwealth* v. *Vanetzian,* 350 Mass. 491, that assault and battery is a lesser included offence.[1]  Elsewhere it is generally held that assault and battery is a lesser included offence in an indictment charging unlawful homicide.  *Keel* v. *State,* 29 Ala. App. 191.  *State* v. *Myers,* 59 Ariz. 201, 207–208.  *Sullivan* v. *State,* 236 Ind. 446, 452.  *Bailey* v. *State,* 146 Miss. 588, 593.  *State* v. *Cochrane,* 151 Ohio St. 128.  *Antoscia* v. *Superior Court,* 38 R. I. 332, 336.  See *State* v. *Robinson,* 182 Kans. 505, 509–510;  40 Am. Jur. 2d, Homicide, § 535.

There are varying views, however, as to what circumstances require an instruction that a verdict of assault and battery may be returned.  Contrast *Marts* v. *State,* 26 Ohio St. 162, 169;  *State* v. *Champion,* 109 Ohio St. 281, 287–288; *State* v. *Cochrane,* 151 Ohio St. 128, 129–130, and *State* v. *Myers,* 59 Ariz. 201, 202–208, with *Sullivan* v. *State,* 236 Ind. 446, and with *State* v. *Robinson,* 182 Kans. 505, 509–510. Of these views that enunciated by the Supreme Court of Ohio seems to us the most desirable, and we adopt it.  Under that rule there must be an instruction on assault and battery if, but only if, the evidence raises a reasonable doubt that the acts of the defendant did not cause the victim's death.  *Marts* v. *State,* 26 Ohio St. 162, 169.  *State* v. *Champion,* 109 Ohio St. 281, 287–288.  *State* v. *Cochrane,* 151 Ohio St. 128, 129–130.

But the facts in the case at bar do not meet this test. Uncontradicted testimony established that the death of the decedent was a direct result of the stab wounds.  Two wit-

---

[1] It would appear that conviction for assault and battery, as the lesser included offence, is authorized by G. L. c. 278, § 12, which reads: "If a person indicted for a felony is acquitted by the verdict of part of the crime charged, and is convicted of the residue, such verdict may be received and recorded by the court, and thereupon the defendant shall be adjudged guilty of the crime, if any, which appears to the court to be substantially charged by the residue of the indictment, and shall be sentenced and punished accordingly."  The prescribed form for an indictment for murder (see G. L. c. 277, § 79), which was used here, contains an allegation of assault and battery.

nesses gave completely consistent, though not identical, accounts of the defendant's attack on the decedent. Miss Johnson testified that from a distance of ten to twelve feet she observed the defendant take a knife "from . . . [his] side" and stab the decedent twice in the chest. One Virginia Harper testified that she was ten or more feet from the victim and the defendant and that there were other people between her and them. However, her account of the relative positions of the victim and the defendant was consistent with Miss Johnson's version. Miss Harper testified that she saw the defendant's right clenched fist against the victim's chest but saw no knife. Only in this last particular does her story differ from Miss Johnson's. But a clenched right fist against the chest in the area where the stab wounds were found is entirely consistent with the stabbing that Miss Johnson described.

Moreover, two pieces of circumstantial evidence lend support to the inference that a fatal stabbing rather than a battery occurred. In response to a friend's query as to who did the stabbing, the defendant said, "I got some sucker." And blood was found on the floor of the dance hall.

In the light of this evidence there was no reasonable basis to allow the jury to return a verdict for assault and battery. Such a verdict could only have resulted from a distorted and palpably unrealistic view of the evidence.

*Judgment affirmed.*