ROMAN CATHOLIC ARCHBISHOP OF BOSTON *vs.*
COMMONWEALTH.

Suffolk.    November 8, 1973. — January 11, 1974.

Present:   TAURO, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Civil,* Exceptions: failure to save exception. *Damages,* Eminent domain. *Eminent Domain,* Damages. *Evidence,* Opinion: expert; Value. *Witness,* Expert.

Roman Catholic Archbishop of Boston *v.* Commonwealth.

In a proceeding for assessment of damages resulting from the taking of a church and its parsonage for highway purposes, it was not error to admit expert testimony of the fair value of the property on the day of condemnation calculated by deducting the estimated cost of restoring the property to its original condition from the cost of its reproduction where the Commonwealth's only exception was to the qualification of the expert on the ground that he was unfamiliar with other methods of depreciation. [487-491]

PETITION for assessment of damages filed in the Superior Court on February 4, 1969.

The case was tried before *Donahue,* J.

*Kevin P. Curry,* Assistant Attorney General (*Garrett M. Byrne, Jr.,* Assistant Attorney General, with him) for the Commonwealth.

*John J. Gartland* for the petitioner.

TAURO, C.J.    The Roman Catholic Archbishop of Boston (petitioner) received a jury award of $725,000 as damages for the loss of improved property lawfully taken by the Commonwealth for highway purposes pursuant to G. L. c. 79. The case is here on the Commonwealth's exception to the denial of its motion to strike the testimony of a key expert witness for the petitioner. The Commonwealth argues that the witness was incompetent to state his opinion as to the value of the property on the basis of the reproduction cost method of valuation because he "was not familiar with depreciation." There was no error in the denial of the Commonwealth's motion.

The evidence pertinent to the judge's disputed ruling may be summarized as follows. On September 19, 1968, the Commonwealth completed a taking of two contiguous parcels of land owned by the petitioner located on Centre Street, Roxbury. One parcel (24,866 square feet) was improved with the All Saints Church and a parking lot. On the other parcel (11,552 square feet) was a three story, wood-framed rectory and a two car, one story brick garage. The church, built in 1894, was impressively large. The basement level covered 8,900 square feet and was suitable for use as a meeting hall. The street level floor equaled the basement in size and could

accommodate more than 1,000 persons for religious services. The structure's ceiling rose forty-three feet above the street level floor.

At trial, Harry J. Keefe, the petitioner's expert, was called on to testify as to the construction and reconstruction costs of the church and rectory at the time of the taking, and, on that basis, to state his opinion of the property's fair value. Keefe testified that he was chief engineer and chief partner of a Boston professional engineering firm which specialized in the construction of churches and cathedrals. For fourteen years prior to his joining the firm in 1954, he had held a variety of construction related engineering positions. On the basis of these and other credentials, the judge ruled that Keefe qualified as an expert witness on the subject of the construction and reconstruction costs of the types of buildings in question. While the Commonwealth at that point did not object or save an exception to the judge's ruling, it did indicate that it wished to inquire further into Keefe's background and expertise. The judge postponed such inquiry until cross-examination.[1]

Keefe stated that he had personally examined each building in question and had engaged in a two step analysis: "I was asked to determine what it would cost in dollars and cents to replace that building new, that particular building at that particular location at that date, new, and then to determine what its depreciation was physically, or what it would cost to bring it back up to a proximate new condition." He then explained how he had carried out his investigation. He first sought to examine the original building plans for each building, but was unsuccessful in his attempt to locate the documents. He next observed the demolition process in an effort to determine what materials had been used in constructing the church and rectory, and to learn more about the internal structure of the two buildings. While partially successful, he was unable to obtain all the information he

---

[1] COUNSEL FOR THE PETITIONER: "Your Honor, I am about to present Mr. Keefe as an expert witness."

was seeking. He then returned to his office files and searched for records of similar church buildings which he or his firm had helped to construct. He discovered two churches which resembled the All Saints Church "in materials, in the massive masonry characteristic . . . and . . . solid construction." One of the churches had been built in 1897, three years after the All Saints Church. He stated that the building plan of this comparable structure was very helpful in providing him with information about the probable original construction costs of the All Saints Church. "I knew what it cost to build it; I know what went into it; I have the plans and specifications in my office." At this point in his testimony, Keefe was asked by the petitioner for his opinion of what it would have cost to build the All Saints Church, brand new, at the time of the taking. He gave a figure of $985,000. He was then asked for his opinion of what it would cost to restore the All Saints Church, at the time of the taking, to its original condition. He gave a figure of $250,000. The Commonwealth objected, and the following colloquy took place:

COUNSEL FOR THE COMMONWEALTH: "I object, Your Honor, and I move that that be stricken. We are not restoring the building to its original condition. The method involved is one of restoration here, whereas the method that should be involved is one of depreciation."

THE JUDGE: "I suppose that is one way of arriving at depreciation, isn't it, Mr. Keefe?"

THE WITNESS: "Yes."

---

COUNSEL FOR THE COMMONWEALTH: "May I inquire, Your Honor?"

THE JUDGE (apparently responding to counsel for the petitioner): "On construction costs?"

COUNSEL FOR THE PETITIONER: "Yes, reconstruction costs." (In his brief for the petitioner, counsel states, "I believe the word 'and' was inadvertently omitted . . . [in the transcript]. I believe my answer to the court was 'Yes, and reconstruction costs.' ")

THE JUDGE: "He may testify."

COUNSEL FOR THE COMMONWEALTH: "Your Honor, may I inquire?"

THE JUDGE: "On cross examination."

COUNSEL FOR THE COMMONWEALTH: "On cross examination?"

THE JUDGE: "Yes. I rule that he is qualified."

COUNSEL FOR THE PETITIONER: "And in your opinion, does the work which would be required constitute depreciation of this building?"

THE WITNESS: "Yes."

It is important to note that the Commonwealth saved no exception at this point. Keefe then proceeded to give a detailed breakdown of the restoration costs. After this, he offered his opinion as to the fair value of the All Saints Church on the day of the taking: $735,000 ($985,000 less $250,000 for reconstruction).

He then testified that he had made a similar analysis of the church rectory, and had concluded that it would cost $194,000 to reproduce the building as of the date of the taking. Over objection, he set the amount of depreciation at $65,000. No exception was preserved by the Commonwealth. His opinion of the rectory's fair value at the time of the taking was $129,000.

The Commonwealth then cross-examined Keefe about various aspects of his investigation. Keefe was asked if he was familiar with any other methods of depreciation. He replied that he imagined there were other methods, but that he always used the approach he had discussed in his earlier testimony. At this point, the Commonwealth moved to strike the witness's testimony, which motion was denied subject to the Commonwealth's exception.[2]

---

[2] COUNSEL FOR THE COMMONWEALTH: "Your Honor, I would like to move at this time to strike the testimony of the witness concerning the reproduction cost of this building. He is not familiar with depreciation."

THE JUDGE: "He is familiar with depreciation."

COUNSEL FOR THE COMMONWEALTH: "Just in this one particular case, Your Honor. He said he did not consider and he does not know of any other methods of depreciation on a building that has been reconstructed."

THE JUDGE: "The jury may decide this is the best method of deciding depreciation. These fellows attempt to depreciate the price of lathes and plaster and so forth. It is impossible, if you are talking about that method."

COUNSEL FOR THE COMMONWEALTH: "I am talking about different methods of depreciation, Your Honor. The witness has shown he is not familiar with others."

THE JUDGE: "He used his method and the jury may decide this is the proper method. It is certainly easily understandable, isn't it?"

COUNSEL FOR THE COMMONWEALTH: "That's correct, but there may be other methods that were not considered here."

Roman Catholic Archbishop of Boston *v.* Commonwealth.

We believe the Commonwealth's sole exception is limited to the narrow issue of whether Keefe was qualified to testify as an expert on the basis of the reproduction cost method.[3] *Commonwealth* v. *Kiernan,* 348 Mass. 29, 33 (1964).

The thrust of the Commonwealth's argument is that the witness, being unfamiliar with depreciation other than the cost of reconstruction, was therefore incompetent to testify on the question of depreciation at all. We reject this reasoning. A lack of familiarity with other methods of depreciation did not necessarily disqualify the witness from testifying on the basis of the method with which he was most familiar. It was open to the Commonwealth to dispute the validity of the reconstruction method of depreciation with its own witness and to establish that a different method would have been more reliable and accurate. Then, as the trial judge indicated, the jury would have decided which was the better method for determining depreciation.

The petitioner's witness employed the restoration cost analysis as his method for determining depreciation. We hold that in the light of his experience and training it was proper to admit his testimony on the basis of the method he selected.

*Exceptions overruled.*

---

THE JUDGE: "I have heard these fellows talk about different methods that are not understandable."

COUNSEL FOR THE COMMONWEALTH: "Would you note the Commonwealth's exception?"

[3]The Commonwealth in its bill of exceptions stated: "The Respondent took an exception to the Court's denial of Respondent's Motion to Strike the testimony of Henry [sic] J. Keefe concerning the reproduction cost of the property in that the witness was not familiar with depreciation."

Much of the Commonwealth's brief is devoted to the broader question of the admissibility of evidence of value based on a reproduction cost analysis. We do not consider this issue, as there was no proper exception entered below. See, e.g., *Commonwealth* v. *Theberge,* 330 Mass. 520, 527 (1953); *Commonwealth* v. *Myers,* 356 Mass. 343, 346 (1969).