COMMONWEALTH *vs.* JAMES H. CURRY.

Suffolk. April 8, 1975. — June 20, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* View, Assistance of counsel, Fair trial, Presence of defendant, Charge to jury, Examination of jurors. *Constitutional Law,* Assistance of counsel. *Jury and Jurors.*

A judge, who refused to permit the defendant in a homicide case to confer with his counsel while they, fourteen jurors, three court officers, and the prosecutor were crammed into a one-room apartment in which the homicide occurred, did not abuse his discretion nor deprive the defendant of the effective assistance of counsel. [197-199]

In a murder case in which at least one juror saw a chief defense wit-
ness, the defendant's son, being arrested as he was leaving the
court room shortly after testifying, there was no error in a failure
by the judge to include the defendant or his counsel in a con-
ference on the matter with a court officer to ascertain what action
might be necessary, nor, where curative instructions were given,
in a failure by the judge to ask the jurors whether they had ob-
served the incident and were thereby prejudiced, nor in a refusal
by the judge to grant a mistrial. [199-202]

Where, at a trial for murder of one found dead in a badly battered
condition, if the jury believed that the injuries were inflicted by
the defendant, there was no basis, in view of undisputed medical
evidence, for a finding that the injuries so inflicted did not cause
the victim's death, a verdict of guilty of the lesser included offense
of assault and battery would not have been allowable and the
judge was not in error in refusing to charge the jury on assault
and battery. [202-203]

There was in a murder case no basis for concluding that a "death
qualified" jury, empanelled after the prospective jurors had been
questioned as to their beliefs regarding capital punishment and
two of them had been excused because of their responses, prior to
the decision in *Furman* v. *Georgia*, 408 U. S. 238, which was ren-
dered during the trial, was more conviction-prone than a jury
otherwise selected. [203-204]

INDICTMENT found and returned in the Superior Court
on March 13, 1972.

The case was tried before *Robert Sullivan*, J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*James A. O'Donovan* for the defendant.

*Robert J. McKenna, Jr.*, Assistant District Attorney, for
the Commonwealth.

TAURO, C.J.    The defendant appeals pursuant to G. L.
c. 278, §§ 33A-33G, from his conviction of manslaughter
on an indictment charging murder in the first degree.
He contends that the trial judge erred (1) in refusing to
allow him to confer with counsel while on a view, (2) in
denying a mistrial when the defendant's son (a chief wit-
ness) was arrested as he left the court room, (3) in refus-
ing to charge the jury on assault and battery, and (4) in

refusing to grant a mistrial on the ground that the jury did not represent a fair cross section of the community. We affirm.

Briefly, the pertinent evidence was as follows: The police testified that after receiving a call at approximately 4 A.M. on Wednesday, February 9, 1972, they arrived at the defendant's apartment where they observed the victim lying on a bed lifeless and in a badly battered condition. The medical examiner testified that she had met her death as a result of "blunt force injuries of the face and head, with resulting subdural hematoma."

The victim and the sixty year old defendant had been living together for approximately fourteen months. They had consumed large quantities of alcohol in the week preceding the homicide. The defendant testified that on the Sunday before the homicide, the deceased was intoxicated and stumbled and fell sustaining cuts and bruises. The defendant's son corroborated his father's story regarding the fall and the resulting injuries.

On behalf of the Commonwealth a young girl, who had been babysitting in an upstairs apartment on the night of the homicide, testified that she heard loud and methodical thumping noises and noises of a man and woman arguing coming from the defendant's apartment throughout much of the evening.

The defendant, when questioned by police, made inconsistent statements regarding when he had last eaten, when the victim had fallen, and how he got blood on his clothing. These statements, as well as prior convictions for forgery and passing bad checks, were introduced during cross-examination to impeach the defendant's credibility.

1. There is no merit to the defendant's contention that he was denied the effective assistance of counsel by the judge's refusal to allow him to confer with his counsel on the view.

The "chief purpose [of a view] is to enable the jury to understand better the testimony which has or may be

introduced." *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 29 (1923). "The function of the jury . . . is simply to observe." *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 674 (1974). Although what is seen on the view may be used by the jury in reaching their verdict, in a "strict and narrow sense a view may be thought not to be evidence." *Commonwealth* v. *Dascalakis, supra*, at 30.

It is well settled that the taking of a view is discretionary with the trial judge. G. L. c. 234, § 35. *Commonwealth* v. *Dascalakis, supra*, at 29. *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 392 (1965). *Commonwealth* v. *DiMarzo, supra*, at 673. Similarly, if a view is taken it is within the judge's discretion to allow the defendant to be present. *Commonwealth* v. *Dascalakis, supra*, at 29. *Commonwealth* v. *Belenski*, 276 Mass. 35, 40-41 (1931). *Commonwealth* v. *Nassar*, 351 Mass. 37, 47 (1966). *Commonwealth* v. *DiMarzo, supra*, at 673. It is a violation of neither the Fourteenth Amendment to the United States Constitution, *Snyder* v. *Massachusetts*, 291 U. S. 97 (1934), affirming *Commonwealth* v. *Snyder*, 282 Mass. 401 (1933), nor art. 12 of the Declaration of Rights of the Massachusetts Constitution, *Berlandi* v. *Commonwealth*, 314 Mass. 424, 449-453 (1943), to conduct a view in the absence of the defendant.

The defendant argues, however, that once a judge permits a view and allows the defendant to be present, it is a violation of his right to counsel to prohibit the defendant from conferring with counsel at the scene of the crime. We disagree. Since the judge could have precluded the defendant's presence, we perceive no basis for limiting the judge's discretion regarding such conversations between the defendant and counsel at the view.

While we have said in recent cases that it is best to allow defendants to confer with counsel during the questioning of witnesses, *Guerin* v. *Commonwealth*, 339 Mass. 731, 734-735 (1959); *Amado* v. *Commonwealth*, 349 Mass. 716, 720-721 (1965); *Commonwealth* v. *Robichaud*, 358 Mass. 300, 303 (1970), we do not believe that

the instant situation is analogous. No rights of the defendant were lost by prohibiting conversation between the defendant and counsel on the view. Had the condition of the premises at the view not been as it was at the time of the crime, the defendant had ample opportunity to make that fact known to his counsel when pictures of the premises were introduced in evidence. There was no evidence that such a difference existed.[1]

The view was taken at a one-room apartment in which the homicide occurred. Fourteen jurors, the judge, three court officers, the assistant district attorney, the defendant and his counsel were all crammed into this one room. It was reasonable for the judge to have concluded, as he apparently did, that any discussion between the defendant and his counsel would be overheard by the jury and that it might have included extraneous matters. It was also reasonable for him to have determined that the danger of the jury's hearing such conversation outweighed any benefit to be derived therefrom. Accordingly, we hold that the judge's refusal to allow such conversation was not an abuse of discretion, nor did it constitute a denial of the defendant's right to the effective assistance of counsel guaranteed by the United States Constitution and the Massachusetts Declaration of Rights.

2. On the third day of the trial, Robert Curry, son of the defendant, testified on his father's behalf. In the course of cross-examination by the prosecutor the court recessed for the day pending further cross-examination. As the witness was leaving the court room through an alcove, he was arrested and handcuffed by two Boston police officers. This occurred at the same time that the jury, who were not sequestered, were leaving the court room.

---

[1] In this case, the defendant made no objection when photographs of the scene were offered in evidence. Defense counsel stated that he had seen the photographs and conceded they were a fair representation of the interior of the apartment.

Defense counsel contends that the occurrence was "in plain view of the jurors," but there is no indication in the record how many jurors actually observed the incident. It is clear, however, that at least one juror observed the arrest, because he later asked a court officer, "What did they bag that fellow for?"

At a lobby conference the next morning, defense counsel moved for a mistrial. The judge stated that he would "inquire into the facts . . . before making a determination." Immediately thereafter, while in his lobby with neither counsel present, the judge spoke to the court officer regarding the occurrence. The judge then determined that general instructions to the jury would suffice.[2] When counsel returned to the lobby, the judge denied the defendant's motion for a mistrial. The record does not indicate that defense counsel asked for the basis of the judge's decision or that he requested additional inquiry into the matter. When the jury returned, the judge gave clear and precise cautionary instructions.[3]

---

[2] The extent of this conference was as follows: COURT OFFICER BASIL: "I went up to count them. And this man said: 'What did they bag that fellow for?' So, of course, I didn't say anything to him. The jury generally walks out two or three at a time. And I just didn't question him anymore. I told him I didn't see anything." THE JUDGE: "He may have mentioned it to the other jurors since that time. This was last night." THE CLERK: "I would agree with Your Honor, general instructions would suffice." THE JUDGE: "I will agree."

[3] "At this stage of the game, Mr. Foreman and ladies and gentlemen of the jury, I want to make this statement to you: You are reminded that this case is to be decided only — and I emphasize the word 'only' upon the evidence which is presented here in the courtroom under oath. If you have observed any activity outside of the courtroom or in the corridors or in the environs of the courthouse or if you have read anything concerning this case, this is not in any way to — and I emphasize this — it is in no way to enter into your deliberations or your discussions in determining the issues which are posed by this case. This case, I say again, shall be determined by you only upon the evidence presented here in this courtroom. This is inherent in your oath as jurors."

The defendant now contends that it was error for the judge not to have declared a mistrial and not to have included the defendant and his counsel in the conference with the court officer regarding what effect the incident might have had on the jurors. We cannot accept either contention.

This is not a case where a defendant or witness was deliberately shackled for security reasons while he was in the court room. We have held that that procedure should be employed only when necessity is shown; guidelines for handling the procedure were laid down in *Commonwealth* v. *Brown,* 364 Mass. 471 (1973). In the present case the witness was not handcuffed when he testified; he was arrested as he left the court room, and this occurred without the knowledge or consent of the judge. We do not approve of the police action in this case, but we cannot say that the arrest of the witness in this manner requires reversal. Cf. *Commonwealth* v. *Ferguson,* 365 Mass. 1, 12-13 (1974); *Commonwealth* v. *Stewart,* 365 Mass. 99, 108-109 (1974). This is especially true in light of the clear and forceful instructions given to the jury as soon as possible after the incident.

The defendant contends that the judge erred by not inquiring of the jurors whether they observed the incident and whether they were prejudiced thereby. We disagree. The judge may well have concluded that anything but general instructions would have focused more attention on the incident and might have operated to the prejudice of the defendant. Although in hindsight another route might appear to have been more appropriate, we cannot say that the judge's decision in this regard was incorrect or an abuse of discretion. See *Commonwealth* v. *Geagan,* 339 Mass. 487, 507-508 (1959). See also *O'Shea* v. *United States,* 400 F. 2d 78 (1st Cir. 1968), cert. den. 393 U. S. 1069 (1969). "We think that the judge's instructions afforded ample direction concerning the jury's duties and avoided dangers of misunderstanding which might have arisen from more specific references to

the . . . [incident]." *Commonwealth* v. *Balakin,* 356 Mass. 547, 554 (1969).

Similarly, in these circumstances, it was not reversible error for the trial judge to discuss the incident with a court officer without the defendant or his counsel present. Apparently all that happened was that the judge made discreet inquiry of the court officer to ascertain whether further action was necessary. This is not a case like *Remmer* v. *United States,* 347 U. S. 227 (1954), where the judge conferred with the prosecutor, the FBI and a juror, out of the presence of the defendant or his counsel, regarding a bribe attempt. Neither is it like *Commonwealth* v. *Robichaud,* 358 Mass. 300 (1970), where we held it was reversible error to exclude the defendant from a conference between the judge and various jurors who had allegedly discussed the case in an improper manner. We do not believe that in the circumstances before us the defendant or his counsel had information that would have aided in the questioning of the court officer. Furthermore, no request was made by defense counsel that either he or the defendant be present when further inquiry was made into the incident. Thus, we are not controlled here by our decision in the *Robichaud* case. "What was done does not fall under the condemnation of 'secret instructions or clandestine communications,'" *Lewis* v. *United States,* 295 Fed. 441, 445 (1st Cir. 1924), cert. den. 265 U. S. 594 (1924), quoting from *Lewis* v. *Lewis,* 220 Mass. 364, 370 (1915), and, accordingly, we find no error.

3. There was no error in the judge's refusal to charge the jury on the lesser included offense of assault and battery. We stated in *Commonwealth* v. *Myers,* 356 Mass. 343, 350 (1969), that "there must be an instruction on assault and battery if, but only if, the evidence raises a reasonable doubt that the acts of the defendant did not cause the victim's death." We believe that "the facts in the case at bar do not meet this test." *Id.* at 350.

There was undisputed medical evidence here that the victim's death was caused by the application of force. The medical examiner testified that the injuries which caused her death were inflicted within a matter of hours, not days, before her death, and that there was no question but that all the injuries were incurred at about the same time. The defendant contended at trial that there was no battery and that the victim died as a result of injuries sustained in a fall two days before her death. If the jury believed this testimony, a verdict of not guilty was warranted. If, on the other hand, the jury believed that the defendant struck the victim, there was no basis, in the light of the undisputed medical testimony, for a finding that the injuries so inflicted did not cause the victim's death.

In light of the evidence stated above, "there was no reasonable basis to allow the jury to return a verdict for assault and battery. Such a verdict could only have resulted from a distorted and palpably unrealistic view of the evidence." *Id.* at 351.

4. The defendant was tried on an indictment charging murder in the first degree. At the time of empanelling the jury, G. L. c. 265, § 2, provided that the penalty for murder in the first degree was death unless the jury recommended otherwise. Accordingly, potential jurors were questioned as to whether their beliefs regarding capital punishment would prevent them from returning an appropriate verdict,[4] and two members of the venire were excused based on their responses.

---

[4] The questions asked by the judge on this issue were as follows: "Have you any opinion that would prevent you from finding a defendant guilty of an offense punishable by death if he were proven to be guilty beyond a reasonable doubt?" "On the other hand, do you have any opinion that would prevent you from recommending leniency or clemency to the Court and joining with the other jurors if you felt that the circumstances warranted life imprisonment rather than capital punishment in the event of a guilty finding?" These questions were clearly proper. See *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968). See also *Commonwealth* v. *Ladetto*, 349 Mass. 237, 245

During the course of the defendant's trial, the Supreme Court handed down its decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972), declaring jury discretion in capital sentencing unconstitutional. In light of that decision, the defendant moved for a mistrial on the ground that, at the time of its deliberations, the jury did not reflect a true cross section of the community. The judge denied the motion. There was no error.

The thrust of the defendant's argument is that he was tried by a "death-qualified" jury; a jury not representative of the community. We have considered the problem of death-qualified juries on many recent occasions. In *Commonwealth* v. *McAlister,* 365 Mass. 454 (1974), we thoroughly examined the question and determined that there was no basis to conclude that death-qualified juries were more conviction-prone than juries otherwise selected. *Id.* at 457-462. Similarly, in *Commonwealth* v. *Valliere,* 366 Mass. 479, 487-488 (1974), and *Commonwealth* v. *Stone,* 366 Mass. 506, 508-509 (1974), we vacated sentences of death while upholding the underlying convictions where the jury selection process was conducted in the manner prescribed in the *Witherspoon* case. Most recently, in *Commonwealth* v. *Harrington,* 367 Mass. 13, 22-24 (1975), where five prospective jurors were excused because of their views on the death penalty, we held that the defendant had "not shown that he was deprived of a jury which could fairly and objectively determine his guilt or innocence." *Id.* at 23. We believe these cases are controlling. The fact that the *Furman* case was decided *during* the defendant's trial is not sufficient to distinguish his case from those cited above.

*Judgment affirmed.*

---

(1965); *Commonwealth* v. *Bumpus,* 362 Mass. 672, 679 (1972), judgment vacated 411 U. S. 945 (1973), affirmed on rehearing, 365 Mass. 66 (1974).