COMMONWEALTH vs. OMAR ALONSO SMITH.

No. 91-P-1499.

Suffolk. April 7, 1994. - July 8, 1994.

Present: GILLERMAN, KAPLAN, & GREENBERG, JJ.

Practice, Criminal, Instructions to jury, Lesser included offense. Homi-
cide. Assault and Battery.

There was no error in a judge's instructions in a murder case that would
create a substantial risk of a miscarriage of justice. [12-13]
There was no basis in the record of a murder trial to support the defend-
ant's request for an instruction to the jury on assault and battery as a
lesser included offense. [13-14]

INDICTMENT found and returned in the Superior Court De-
partment on May 9, 1989.

The case was tried before Robert A. Mulligan, J.

Richard Abbott for the defendant.

Jane A. Sullivan, Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. Indicted for murder in the first degree, the de-
fendant upon jury trial was convicted of murder in the sec-
ond degree. He appeals the conviction, claiming error in a
part of the judge's instructions and in the judge's failure to
charge on simple assault and battery as a "lesser included"
offense.

The jury could have accepted as true the substance of the
Commonwealth's case-in-chief, which ran as follows. A week
before the fatal shooting on September 17, 1988, there was
an encounter between the victim, Jean Gary Gervais, and the
defendant, Omar Smith, outside the Blue Moon Club in the
Dorchester section of Boston. The precise cause of embitter-
ment is in some doubt, but we learn that the defendant

threatened to kill Gervais, and Gervais produced a knife in response.

About 2:15 A.M. on September 17, Gervais was standing with twenty or more persons on the porch of the house at 128 Olney Street, Dorchester, waiting in line to pay an admission fee and join the "after-hours party" going on inside (this was a kind of illicit party that starts when regular clubs close at 2 A.M.). The defendant mounted the porch; Gervais was already there. He confronted Gervais and said, just before or after he fired his weapon, "Remember I was going to kill you," or "I told you I was going to get you." The shooting was at a range of perhaps five feet. Gervais fell and was pronounced dead at a hospital shortly thereafter. The five Commonwealth witnesses agreed (although differing in details[1]) that the defendant shot Gervais in cold blood.

Gervais suffered from four gunshot wounds: one to the left shoulder and chest and a second to the left thigh, both relatively minor; a third to the right knee, involving a large loss of blood; a fourth, the most serious, to the right arm and chest cavity, puncturing both lungs. The trajectory of the last bullet may be accounted for by Gervais' turning to the left (perhaps under the impact of the shot to his left shoulder) and presenting his right shoulder to the assailant. The defendant tried to urge the possibility of a third person standing to Gervais' right side shooting at him laterally and striking his right shoulder. The medical examiner testified that the cause of death was extensive internal and external bleeding; he said Gervais might have survived all but the fourth wound, especially if bleeding from the knee wound had been stopped at an early stage.[2]

---

[1]There were differences about how long the defendant was on the porch before the shooting began, whether words were exchanged, whether the defendant's first shot was in the air, into the ground, or at Gervais.

[2]A single 9 mm. bullet was recovered from Gervais' body. Search of the porch and surrounding area turned up two spent cartridges; according to expert testimony, both came from the same 9 mm. automatic or semiautomatic gun. The medical examiner testified that a 9 mm. weapon was the probable cause of all the wounds.

The defendant, testifying in his own defense, did not deny that he shot at Gervais. He said that Gervais had moved his arms in a way that made him suspect he might be reaching for a weapon. The defendant also said he feared that one of Gervais' friends might be shooting at him. He said, further, that he heard gunshots coming from his right side; yet, he shot only in Gervais' direction. In the end, the defendant was claiming both that he shot in self-defense and that the shot that killed Gervais came from another source.[3]

There was desultory testimony from a number of other defense witnesses: that a large number of shots, ten or more, were heard that night, and that some of those shots came from inside the house. None of the witnesses identified another shooter or another person holding a gun.[4]

The judge instructed the jury on first and second degree murder and manslaughter and on self-defense, and the verdict slip allowed the jury any of four verdicts: not guilty, guilty of murder in the first or second degree, or of manslaughter. As noted, the jury returned a verdict of second degree murder.

1. The defendant contends that the judge misspoke in his instructions in such a way as to suggest that the defendant's claim of a lateral shooting by a third person was related to one of the minor wounds (left shoulder and chest). This could have been damaging to the defendant's case, for he was claiming that it was the most serious wound, the wound that killed, for which he was not responsible. But as one reads the instructions, the judge's references appeared tied to the medical examiner's designation of the "track J" wound,

---

[3]It appeared that the defendant went to New York soon after the shooting and that he obtained a driver's license in a false name when he returned to the Commonwealth. Countering the implication of consciousness of guilt, the defendant said the flight was out of fear of revenge from Gervais' friends and the false license was irrelevant.

[4]The defendant said he thought he saw one Samuel Auguste (with whom he said he was not on good terms) standing at the door and pointing an object at him, but he did not identify it as a gun. At one point he claimed to have seen one individual (Leth Delva, a Commonwealth witness) with a gun, but he did not see him use the gun, and he later denied seeing any weapons at all.

which was clearly the right shoulder-chest cavity-lungs puncture wound. Thus there was no confusion. Indeed the defense made no objection at the time, and there is no hint of a mistake that would create a substantial risk of a miscarriage of justice.

2. As to the question of a lesser included offense, we recur to the well-known formula that a crime can be lesser included only if all its formal elements are comprised in the greater crime. See *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981); *Commonwealth* v. *Burkett*, 5 Mass. App. Ct. 901, 903 (1977); *Commonwealth* v. *Parenti*, 14 Mass. App. Ct. 696, 703-704 (1982). Strictly speaking, assault and battery does not sustain that relation to murder because murder, defined as unlawful homicide with malice aforethought, does not require a battery: one who, acting with the requisite intent, causes a known heart patient to suffer a fatal attack by terrifying him, or steals a patient's life-sustaining medicine with like result, or lures an unwitting victim out on a cliff where he falls to his death, is, we think, properly charged with murder. Nevertheless, the Supreme Judicial Court in *Commonwealth* v. *Myers*, 356 Mass. 343, 350 & n.1 (1969), adopted the contrary view, namely, that assault and battery is lesser included, relying in part on G. L. c. 277, § 79, which, in the model allegations for a murder indictment, uses the expression "did assault and beat C.D., with intent to murder him . . . and by such assault and beating did . . . murder C.D. . . . ." Later decisions take it for granted that assault and battery is subsumed in murder. See *Commonwealth* v. *Curry*, 368 Mass. 195, 202 (1975); *Commonwealth* v. *Zukoski*, 370 Mass. 23, 24-25 (1976); *Commonwealth* v. *Longo*, 402 Mass. 482, 483 (1988); *Commonwealth* v. *Fickett*, 403 Mass. 194, 200 n.5 (1988); *Commonwealth* v. *Souza*, 34 Mass. App. Ct. 436, 438 n.2 (1993); *Commonwealth* v. *Gilliard*, 36 Mass. App. Ct. 183, 191 (1994). Cf. *Commonwealth* v. *Dixon*, 34 Mass. App. Ct. 653, 654 (1993).

We need not consider whether the *Myers* rule is an anomaly to be accepted, rejected, or limited — although with

some damage to logical structure — to cases where the murder as pictured by the Commonwealth involved a battery. Even if assault and battery is here taken as fitting nominally under the murder umbrella, the judge was right in declining to instruct the jury on it or to allow the jury to consider it. The difficulty for the defendant is that there must be a tolerable amount of evidence of record to support a jury finding of assault and battery in order to warrant the judge in giving the instruction. Here nothing in the testimony matched a charge of assault and battery. No one asserted that the defendant had merely pushed Gervais or punched him. There was no dispute that the defendant shot in Gervais' direction; indeed, the defendant himself conceded that he shot at Gervais. The defendant put forward a theory of self-defense and, with qualms, a judge might think there was enough in the testimony to warrant submitting the matter to the jury: if the jury were satisfied that the Commonwealth had not disproved self-defense, they would be obliged to acquit the defendant; and self-defense might possibly figure in a verdict of manslaughter. But, in contrast, however much a judge was prepared to indulge the defendant, there was no basis for going along with him and proffering to the jury his claim that, if he was guilty at all, it was of assault and battery. The judge was right to decline a charge which could be raised only upon "a distorted and palpably unrealistic view of the evidence." *Commonwealth* v. *Myers*, 356 Mass. at 351. Similarly affirming a refusal, because of lack of support in the evidence, to charge lesser included offenses in respect to formal indictments for murder were *Commonwealth* v. *Costa*, 360 Mass. 177, 184-185 (1971); *Commonwealth* v. *Caine*, 366 Mass. 366, 374-375 (1974); *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980); *Commonwealth* v. *Egerton*, 396 Mass. 499, 504 (1986).

*Judgment affirmed.*