## COMMONWEALTH vs. ROBERT T. BUMPUS.

Suffolk.    January 7, 1974. — April 4, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Practice, Criminal,* Examination of jurors.  *Constitutional Law,* Jury.
   *Jury and Jurors.*

Neither the memorable quality ascribed by a former police chief to a case
    in which a black defendant was charged with murder of a white bank
    official, nor possible pressure exerted by bank officials upon the
    prosecutor to obtain the conviction of the defendant, nor pre-trial
    publicity unrelated to racial prejudice, nor the fact that the victim
    was the first bank officer to be murdered during a bank robbery in
    Massachusetts established that the defendant was a special target for
    racial prejudice, requiring that specific questions on racial prejudice
    be put to the venire. [68-69]
A black defendant, convicted of murdering a white bank official, was not
    entitled to an evidentiary hearing on the question of racial bias among
    the veniremen. [69-70]

INDICTMENTS found and returned in the Superior Court
on September 10, 1970.

The cases were tried before *McLaughlin,* C.J.

*Harvey A. Silverglate* for the defendant.

*Newman A. Flanagan,* Assistant District Attorney
(*Thaddeus R. Beal, Jr.,* with him) for the Commonwealth.

HENNESSEY, J.   This case is here pursuant to an order
entered by the United States Supreme Court[1] granting the
defendant's petition for certiorari, vacating the judgment
affirming his conviction (*Commonwealth* v. *Bumpus,* 362

---

[1] *Bumpus* v. *Massachusetts,* 411 U. S. 945 (1973). Although the Supreme Court
refers to the "conviction" and the "judgment," the defendant was convicted on
five indictments, four for armed robbery and one for murder. This opinion is an
affirmation of all five judgments.

Mass. 672 [1972]), and remanding the case to us for further consideration in the light of *Ham* v. *South Carolina,* 409 U. S. 524 (1973). Thus the only issue we must decide is whether the decision in the *Ham* case requires that the defendant's conviction should be reversed on the ground that the trial judge refused to ask some of the veniremen[2] whether they were racially prejudiced. The defendant had made the prerequisite motion to have such questions asked on voir dire.

In *Commonwealth* v. *Ross,* 363 Mass. 665, 673 (1973), cert. den. sub nom. *Ross* v. *Massachusetts,* 414 U. S. 1080 (1973), we interpreted the *Ham* decision to require such questions only where there is reason to believe that the defendant may be a "special target for racial prejudice." We have several times indicated that the fact that the defendant is black and the victim white does not suffice to bring a case within the *Ham* rule and to require specific questions by the trial judge as to possible racial prejudice among the veniremen. *Commonwealth* v. *Ross, supra. Commonwealth* v. *Ryles,* 363 Mass. 674 (1973), cert. den. sub nom. *Ryles* v. *Massachusetts,* 414 U. S. 980 (1973). Cf. *Commonwealth* v. *Rodriquez,* 364 Mass. 87 (1973). We are not inclined to rescind this requirement that special circumstances be shown. In the absence of such circumstances a judge might well conclude that specific questions would be counter-productive and serve to inject racial bias into the trial rather than to remove it. In so concluding we

---

[2] The trial judge went beyond the questions required by statute to be asked of prospective jurors on this subject. G. L. c. 234, § 28. In explaining the question "Are you sensible or conscious of any bias or prejudice that you may have in this case" to the first panel, he specifically adverted to racial prejudice: "And that's a wide open question. If you have any feelings for or against the Commonwealth or for or against the defendant, which leaves you in a judgment that you can't fully and fairly call the issue before you, prejudice occasioned by any reason, race, color, creed, the nature of the crime before you, where or when it was committed, anything which deters from your impartiality, disclose that to me."

To the second panel, he spoke more generally: "Now, bias or prejudice means feelings for or feelings against either the Commonwealth or the defendant, whether it's based on solid or substantial reasons or whimsical or fanciful reasons. If you have a frame of mind that you are biased or prejudiced for or against the Commonwealth or the defendant let me know." The last two jurors selected were simply asked the statutory questions.

note that the United States Supreme Court recently denied certiorari in the *Ross* case despite a dissent which vigorously raised the issue of the validity of that requirement. 414 U. S. 1080.

In the *Ham* case the black defendant was well known as a civil rights activist in the small community where he had lived most of his life. His basic defence at the trial was that law enforcement officers were "out to get him," because of his civil rights work and that he had accordingly been framed on the charge of possession of marihuana. Thus the entire outcome of the case hinged on the defendant's credibility in contrast with that of the white policeman.

No comparable circumstances distinguish this case. The defendant urges that the case be remanded to the Superior Court for the taking of evidence of "special circumstances," viz.: (1) the opinion of a former chief of the Boston police homicide division that this was one of the ten most memorable murder cases of his long career; (2) the possibility that pressure may have been exerted by banking officials on prosecuting authorities to convict the defendant; (3) the character and extent of press coverage of the crime, investigation and trial; and (4) the apparent fact that this was the first murder of a bank officer during a bank robbery in Massachusetts history. We cannot agree that any of these matters warrants a conclusion that the defendant was likely to be a particular target of racial bias.

The purpose of the questioning mandated by the *Ham* case is to remove extraneous issues at the trial so that the case may be judged on the evidence alone. Thus, the only circumstances that would warrant specific interrogation as to possible racial prejudice among the veniremen are those of which the trial would be expected to make the jury aware. The memorable quality of the case to a particular police officer is irrelevant to this problem. Private pressures on the prosecutor to obtain a conviction are likewise immaterial.

The claim that pre-trial publicity was related in any way to racial bias has not been established. That such publicity

may have stated that a suspect was black and a victim was white falls far short of reaching the mandate of the *Ham* case. Cf. *Commonwealth* v. *Monahan*, 349 Mass. 139, 157 (1965).

That the victim in the present case may have been the first bank officer to be killed during a Massachusetts bank robbery is also irrelevant. The uniqueness of the case in other regards bears no relation to any special problem of racial prejudice, which is all that concerns us here. Moreover, there is no reason to believe that the jury were ever aware of this.[3]

The defendant also endeavors to make an issue of the supposed symbolic significance of the occupation of the victim. We reject the implication that such a factor could constitute the kind of special circumstances that exacerbate the risk of racial prejudice intruding into the decision of a case and call for the prophylactic measure of specific questions on voir dire. We nevertheless note that if bankers were to be recognized as representative of symbolic authority, it would seem imperative to treat policemen similarly. We have already established that merely because the victim is a quasi policeman there is no special circumstance of significance under the *Ham* rule. *Commonwealth* v. *Ross*, 363 Mass. 665, 671-672 (1973), cert. den. sub nom. *Ross* v. *Massachusetts*, 414 U. S. 1080 (1973).

Finally, the defendant urges that as the case was tried before our suggestion in the *Ross* case, "[W]hen a defendant requests that the prospective jurors be questioned about their racial prejudice, the judge should make specific inquiries of counsel concerning the racial aspects of the case" (*id.* at 673), we should at least remand the present case for an evidentiary hearing and findings of fact. The defendant misconstrues the nature and function of the inquiry we intended. It is not to be an evidentiary hearing but merely an opportunity for counsel to state his understanding of the problem, if any, in this area. As its sole

---

[3] The apparent source of this knowledge for the defendant was an article published on November 18, 1973.

function is to inform the judge of factors which may arise at trial, it is totally unnecessary in the present case where trial has already occurred. With the advantage of hindsight we can state with assurance that racial prejudice could not have been expected to intrude into the trial of this case; there is no evidence that any such aspect arose at trial. There is accordingly no need for further inquiry.

Nothing that we have said in this opinion is intended to derogate from the trial judge's serious responsibility to consider all relevant circumstances when he is asked to address special questions to the venire concerning bias and prejudice.

*Judgments affirmed.*