**Robert BUMPUS, Petitioner,**

v.

**Frank GUNTER and Frank Hall, Respondents.**

Civ. A. No. 74–5197–G.

United States District Court, D. Massachusetts.

Feb. 16, 1978.

Norman Zalkind, Stephen L. Saltonstall, Boston, Mass., for petitioner.

Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., for respondents.

## MEMORANDUM OF RULING AND PROCEDURAL ORDER

GARRITY, District Judge.

Since May 1971 petitioner has been serving a life sentence after conviction in the state court of first degree murder. In November 1974 he petitioned for habeas corpus on the sole ground that he was denied due process by the trial judge's failure to question prospective jurors concerning racial prejudice inasmuch as he is black and

the victim was white, citing *Ham v. South Carolina*, 1973, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46. Petitioner's contention was upheld in a similar case, *Ristaino v. Ross*, 1 Cir. 1974, 508 F.2d 754, and proceedings in the case at bar were stayed pending certiorari. In March 1976, the Supreme Court reversed *Ristaino v. Ross*, 1976, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258, and petitioner in the instant case was granted leave to amend his petition by adding a second claim, viz., denial of due process because of errors in instructions as to the prosecution's burden to prove guilt beyond a reasonable doubt. In June 1976, we granted the respondent's motion to dismiss the first claim and denied respondent's motion to dismiss the second claim on the ground of failure to exhaust available state remedies, and in September 1976 we heard the merits of the second claim. Thereafter the parties filed the transcript of the state court trial, including the complete charge to the jury.

Petitioner's second claim was considered and rejected by the Supreme Judicial Court of Massachusetts in 1972, *Commonwealth v. Bumpus*, 362 Mass. 672, 681–682, 290 N.E.2d 167. It was unaffected by the Supreme Court's grant of certiorari and remand for further consideration by the Supreme Judicial Court of the prospective juror interrogatories issue and the subsequent grant and ultimate denial of habeas corpus on that issue, except that petitioner delayed presenting it in this case until after the first claim was determined against him with finality. When urged before the Supreme Judicial Court in 1972, petitioner challenged the charge on reasonable doubt in terms of prejudicial error rather than denial of due process. However, petitioner's brief in the state appellate court, filed in the instant case, shows that the claim there was the same as here presented. It cites several federal cases, although not *In Re Winship*, 1970, 397 U.S. 358, 364, 90 S.Ct.

1068, 25 L.Ed.2d 368.[1] In denying the motion to dismiss the second claim on the ground of failure to exhaust state remedies, we applied *Picard v. Connor*, 1971, 404 U.S. 275, 276–278, 92 S.Ct. 509, 30 L.Ed.2d 438, and concluded that the substance of the petitioner's second claim in this court was fairly presented to the state courts.[2]

Our ruling now, that errors in explaining the prosecution's burden of proof were of constitutional dimension, rests upon the recent decision by the Court of Appeals in *Dunn v. Perrin*, 1 Cir., 570 F.2d 21, holding that the cumulative effect of similar, though different, errors in charging a jury warrants relief by habeas corpus unless the error was harmless. The latter issue has not been briefed or argued in this case and therefore this aspect of the matter will be scheduled for further hearing.

■ The trial judge's instructions on burden of proof must be "viewed in the context of the overall charge", *Cupp v. Naughten, supra*, 414 U.S. at 147, 94 S.Ct. at 400. The part explicitly defining the burden, pp. 1503–1509 of the transcript, appears as an appendix to this memorandum (certain phrases have been underlined for ready reference). At six other places in the instructions (pp. 1462, 1463, 1469, 1486, 1489 and 1524), which ran for 84 pages, pp. 1457–1541, the court stated the prosecution's obligation to establish beyond a reasonable doubt every element of the crimes charged, but defined it only in the part set forth in the appendix.

■ Defining reasonable doubt, at 1505–1506, the judge instructed that "it has to be a doubt in your mind that you can stand up in the jury room and argue with principle and integrity to your fellow jurors." This was equivalent to the instruction, "It is such a doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason", which was

1. *Cupp v. Naughten*, 1973, 414 U.S. 141, 146–147, 94 S.Ct. 396, 38 L.Ed.2d 368, had not then been decided.

2. Thereafter, in *Commonwealth v. Ferreira*, Mass.Adv.Sh. (1977) 1594, 1609–1610, 364

N.E.2d 1264, the Supreme Judicial Court implicitly reaffirmed the conviction in the instant case by citing it with approval on the question of the adequacy of the instructions on the prosecution's burden of proof.

ruled improper in *Dunn v. Perrin*, 570 F.2d 21, p. 23. In rejecting petitioner's appeal on this point, the Supreme Judicial Court, *Commonwealth v. Bumpus, supra*, 362 Mass. at 682, 290 N.E.2d 167, stated that the language in question was figurative and symbolic and not an instruction which could or should have been taken literally. We do not disagree but believe that it makes no difference. Whether understood literally or figuratively, the instruction "suggested that a doubt based on reason was not enough to acquit." *Dunn v. Perrin*, p. 23. It would have to be one which the holder could, at least in his own mind, support "with principle"—presumably either legal or moral.

Adverting to the concept of "moral certainty" theretofore used in defining proof beyond a reasonable doubt, the judge defined it as "the same degree of satisfaction that you would look for when you took action in the major affairs of your life" and then gave the example of a young man suffering from heart disease from which he "might die at any time" who was contemplating surgery which he "might not survive"; what the young man should do is "to weigh all the evidence on both sides and then when it has been concluded make a judgment, either to have the operation or not to have it".[3] Applying the analogy to the instant case, the jurors should be "satisfied to a moral certainty that . . . the course of action you are taking is the right course for you to take. If you have a settled conviction that you are doing the right thing, that is what the law considers to be satisfaction to a moral certainty." Jurors should "look for the same degree of satisfaction, of proof of the essential elements of these crimes that you would look for in major affairs of your own lives before you took action."

Unlike the charge discussed in *Dunn v. Perrin, supra*, pp. 24–25, the charge in this case referred to "taking action" as distinguished from "refraining from acting" or

"hesitating to act". See *Holland v. United States*, 1954, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150, *Scurry v. United States*, 1965, 120 U.S.App.D.C. 374, 376, 347 F.2d 468, 470. Also it posed the heart patient's dilemma without relating it directly to proof beyond a reasonable doubt or the existence of a reasonable doubt, but rather only to moral certainty which came down to "taking the right course for you" or "doing the right thing" after weighing all the evidence on both sides. Moreover, under the hypotheses stated to the jury, a decision "either to have the operation or not to have it" could not be free from reasonable doubt since death might reasonably follow either course. Principally the analogy is inherently and necessarily confusing: to decide upon a future course of action, whether to have an operation, change a job, get a divorce, etc., is essentially different from accepting or rejecting the truth of a factual proposition such as a criminal indictment. Deciding the wisdom of future action involves a different type of judgment than that used in deciding whether something did or did not happen. It is doubtless permissible for judges to instruct jurors that they should take their responsibility very seriously, and a careful reference to important personal problems has been said to be of assistance to the jury. But to give such an instruction in conjunction with an explanation of the Government's burden of proof, rather than at some different part of the charge, serves only to lighten the Government's proper burden. In the instant case, the analogy to the young man with heart disease in conjunction with the definition given of moral certainty permitted the jurors to convict provided they conscientiously weighed all the evidence and arguments on both sides of the case and concluded that they were doing the right thing.

The Supreme Judicial Court recognized the "inherent difficulty in using such examples" but rejected petitioner's appeal on the ground at issue because "the instructions as

---

**3.** At the trial, before the charge, petitioner had requested in writing that the judge refrain from giving this instruction and illustration; see p. 31 of the Summary of Record in the state court appeal.

a whole were comprehensive, were based upon traditional language, and adequately conveyed the concept of reasonable doubt to the jury."[4] We respectfully disagree.

The concluding words of the jury instructions included a second analogy to medical practice which we believe compounded the error in discussing the patient with the heart valve deficiency. The last paragraphs of the charge were as follows, at pp. 1540–1541:

All I can say to you is you are not responsible for this defendant being here. *You are like the family doctor who listens to symptoms and makes a diagnosis of what's wrong with the patient.* You are not responsible because the patient is sick. You don't listen to symptoms in a court of law. You listen to evidence, but they are just like symptoms.

*When you have digested and weighed all the evidence, then you make a diagnosis, too, but you don't call it a diagnosis. You call it a verdict.* It's a serious responsibility you have, and I am sure you will decide it with integrity and principle. [Emphasis added.]

Medical diagnosis is a form of opinion which seldom rests upon proof beyond a reasonable doubt. It is almost always based upon a preponderance of the evidence. A verdict in a criminal case is not an opinion or diagnosis comparable to a medical diagnosis. The jury's verdict decides all questions of fact with finality and is non-reviewable, whereas medical diagnoses are frequently revised and regularly reviewed. A much higher degree of certainty must exist in the minds of jurors before reaching a guilty verdict in a criminal case than in the mind of a family doctor diagnosing what's wrong with his patient.

Also, we do not consider that "traditional language" or precedent includes the instruction, "I impress upon you that it is not beyond the possibility of your being wrong, so don't let that be a haunting thought which bothers you." This instruction repeated an earlier one given with reference to the dominant issue at the trial, viz., identification of the defendant. At p. 1489 the judge stated, "I don't want you to be deterred on the identification evidence by the possibility that you might be wrong, because that is not the burden of the Commonwealth. The burden of the Commonwealth is to satisfy you beyond a reasonable doubt." It is of course correct to instruct that the prosecution need not prove guilt beyond all possible doubt. But we think it different, and inconsistent with the accepted standard, to charge that jurors should not be bothered or deterred by the possibility that they might be wrong. The main purpose of requiring the prosecution to prove guilt beyond a reasonable doubt is to assure that jurors will not be wrong in convicting. It is their duty in returning a verdict to speak the truth. To instruct them not to worry about the possibility of being wrong, in our opinion, detracts from the seriousness of their responsibility and tends, no less than analogies to important decisions in personal affairs, "to trivialize the awesome duty of the jury to determine whether the defendant's guilt was proved beyond a reasonable doubt." *Commonwealth v. Ferreira, supra,* Mass.Adv.Sh. (1977) at 1609, 364 N.E.2d at 1272.

It was also error, we believe, in the context of other instructions on burden of proof to charge, "If an unreasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction, practically every criminal would be set free to prey upon the community. Such a rule would be wholly impractical and would break down the forces of law and order and make the lawless supreme." While this statement, which the judge quoted directly from an opinion by the Supreme Judicial Court, is a sound proposition of law, not every legal principle is properly includible

---

4. In *Commonwealth v. Ferreira, supra,* Mass. Adv.Sh. (1977) at 1608–1611, 364 N.E.2d 1264, the Supreme Judicial Court reversed a murder conviction partly because of similar instructions on reasonable doubt; the charges in the instant and other cases were distinguished, at 1609–1610, 364 N.E.2d at 1273, on the basis of "the saving graces present . . . when taken in their entirety."

in jury instructions. For example, it is true that the presumption of innocence was not developed for the purpose of aiding the guilty to escape punishment, but it is error to so charge a jury in a criminal case. *Reynolds v. United States*, 9 Cir. 1956, 238 F.2d 460, 463; *Gomila v. United States*, 5 Cir. 1944, 146 F.2d 372, 373. In the instant case, the references to criminals preying upon the community and making the lawless supreme advised the jurors of the dire consequences of employing an alternative rule unknown to criminal law and not proposed or argued by any party. While these statements were more in the nature of observations then instructions, their effect was to warn the jurors against misapplying the test of reasonable doubt in favor of a defendant without warning them similarly against misapplying it in favor of the prosecution.[5] They suggested circumspection beyond conscientious application of the relevant rule of proof beyond a reasonable doubt and invited the jurors' attention to the general consequences of their verdict rather than to the right way of arriving at one in the case at hand.

Whether erroneous instructions in a criminal case "so infected the entire trial that the resulting conviction violates due process", *Cupp v. Naughten, supra*, 414 U.S. at 147, 94 S.Ct. at 400, depends upon whether the errors were harmless beyond a reasonable doubt, which may turn on whether the Commonwealth's proof of guilt was overwhelming. See *Harrington v. California*, 1968, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Dunn v. Perrin, supra*, at p. 25, *Commonwealth v. Ferreira, supra*, Mass.Adv.Sh. (1977) at 1608, 364 N.E.2d 1264. The parties in the instant case have not briefed these points nor the question whether error in instructions on burden of proof in a criminal case can never be harmless. See *Chapman v. California*, 1966, 386 U.S. 18, 20, 87 S.Ct. 824, 17 L.Ed.2d 705, *Dunn v. Perrin, supra*, at p. 25. Accordingly it is ordered that the parties file briefs on these issues on or before February 27, 1978; they may if they wish file reply briefs within one week after receiving copies of their opponents' briefs. Further oral argument is hereby scheduled for March 13, 1978 at 2:30 p. m.

## APPENDIX

### (underlining added)

(p. 1503)　　I am now coming to a very critical issue for you to consider, and that is the obligation of the Commonwealth to establish the guilt of this defendant on these indictments beyond a reasonable doubt. I am going to try to explain to you what is meant by a reasonable doubt, but before I do, I am going to read to you what our Supreme Judicial Court says constitutes a reasonable doubt. In determining whether or not the Commonwealth has established its case beyond a reasonable doubt, you will go by the (p. 1504) language which I now quote from the Supreme Judicial Court:

"Proof beyond a reasonable doubt does not mean proof beyond all doubt, nor beyond a whimsical or fanciful doubt, nor proof beyond the possibility of innocence. It is rarely, if ever, possible to find a case so clear that there cannot be a possibility of innocence.

"If an unreasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction, practically every criminal would be set free to prey upon the community. <u>Such a rule would be wholly impractical and would break down the forces of law and order and make the lawless supreme.</u>

"A reasonable doubt does not mean such doubt as may exist in the mind of a man who is earnestly seeking for doubts or for an excuse to acquit a defendant, but it means such doubt as remains in the mind of a reasonable man who is earnestly seeking the truth.

"A fact is proved beyond a reasonable doubt when it is proved to a moral certainty, as (p. 1505) distinguished from an absolute or mathematical certainty, when it is proved to a degree of certainty that satisfies the judgment and consciences of the jury as reasonable men and leaves in their mind as reasonable men a clear and settled conviction of truth.

5. Another example of the instructions not being comprehensive, in our opinion, is their omission, after repeated and varied negative definitions of reasonable doubt, of any negative definition of the relevant burden of proof, e. g., not by a preponderance of the evidence, although requested by the defense.

"But if, when all is said and done, there remains in the mind of the jury any reasonable doubt of the existence of any facts which is essential to the guilt of the defendant, the defendant must have the benefit of it and cannot be found guilty upon the charge."

Now, a reasonable doubt in lay language means that a doubt is an uncertainty of mind and a lack of conviction, as reasonable men, based upon a reason. It is just as simple as that.

When the Court talks about it not being a whimsical or a fanciful doubt, it means it isn't something which has no substance to it. It isn't something which is floating around in the area that you can't pin down to reason and logic. It isn't a doubt that you conjure up for the purpose of creating a doubt.

(p. 1506) When you get all through, it has to be a doubt in your mind that you can stand up in the jury room and argue with principle and integrity to your fellow jurors, and if you have that kind of a doubt on any area of this case, the defendant is entitled to be acquitted.

I impress upon you that it is not beyond the possibility of your being wrong, so don't let that be a haunting thought which bothers you. If you are satisfied in accordance with the standard that I have indicated beyond a reasonable doubt, to a moral certainty, because otherwise you place upon the Commonwealth a burden which it does not have. So in that definition of reasonable doubt, the thing which seems to cause the most confusion is when the Court says you shall be satisfied to a moral certainty.

I am going to try and help you on what I think is a moral certainty, and if you disagree with me use any standard within the definition of the law I have given to you that satisfies you.

(p. 1507) A moral certainty is less than a mathematical certainty and less than a scientific certainty, because human beings are endowed with a free mind and a free will, that you can't put their conduct into a computer or a test tube and come out with an answer.

Our court has described it as being satisfied in your minds and your consciences with the same degree of satisfaction that you would look for when you took action in the major affairs of your life.

Now, if affairs in your life are not major and not critical, or minor, maybe you would take action without the degree of certainty that the court asks of you to have in weighing the guilt or innocence of a defendant.

But I am going to pose to you what I think would be a major affair of your life.

If you were a young man with a growing family and it was determined that you had a definite deficiency of your heart valve, your surgeon might well advise you that if you had corrective sugery, the heart valve deficiency could be cured and you would live a normal and useful and healthy life.

(p. 1508) He might also advise you that the operation was attendant with great risk, you might not survive the operation, and he also might advise you that if you don't have the operation, you might die any time, you may live a few years, and you may live a normal life.

In that situation, you have to make a judgment in the interests of your own health, in the interests of your family and your responsibilities to them. I would say that was a major affair in your private lives.

Now, none of us have a crystal ball. None of us can foresee the future and we have to take a course of action. Now, all we can do is listen to the arguments for and the arguments against by those who are best able to advance those arguments to understand the pros and cons, to weigh all the evidence on both sides and then when it has been concluded make a judgment, either to have the operation or not to have it.

(p. 1509) If you are satisfied to a moral certainty that having weighed and evaluated everything that can be considered on the subject, the course of action you are taking is the right course for you to take. If you have a settled conviction that you are doing the right thing, that is what the law considers to be satisfaction to a moral certainty. That is what the law is looking for when they ask you to be satisfied to a moral certainty in pondering and weighing this issue of reasonable doubt. It asks nothing more.

This is a major affair in the lives of all of us, this trial, so look for the same degree of satisfaction, of proof of the essential elements of these crimes that you would look for in major affairs of your own lives before you took action.