COMMONWEALTH *vs.* JOHN J. KELLEHER, JR.

Middlesex.  May 6, 1985. — September 12, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal*, Appeal, Instructions to jury. *Error*, Harmless.

A criminal defendant could properly raise, on his motion for a new trial, issues as to the adequacy of the trial judge's instructions to the jury on reasonable doubt, where his claim rested on constitutional theories not sufficiently developed at the time of his trial in 1972 to afford him a genuine opportunity to raise it at that juncture of the case. [825-826] LIACOS, J., concurring.

The judge at a criminal trial erred in including in his instructions to the jury specific examples of important decisions in the jurors' personal lives as illustrative of the Commonwealth's burden of proving the defendant's guilt beyond a reasonable doubt. [826-827] LIACOS, J., concurring.

At a criminal trial where the only evidence against the defendant, who provided an alibi, was eyewitness identification, the judge's error in instructing the jury on the standard of proof needed to convict the defendant by employing specific examples of important decisions in the jurors' personal lives was not harmless beyond a reasonable doubt. [827-828] LIACOS, J., concurring.

INDICTMENTS found and returned in the Superior Court on November 5, 1971.

A motion for a new trial, filed on June 2, 1983, was heard by *Elizabeth J. Dolan*, J.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Joseph P. Musacchio*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J.  After trial by jury in 1972, the defendant John J. Kelleher, Jr., was convicted of armed burglary, armed rob-

bery (two indictments), and rape (two indictments).[1] On appeal from the denial of his motion for a new trial, the defendant argues that the charge to the jury incorporated an inadequate definition of "beyond a reasonable doubt." We agree with the Appeals Court that the charge was deficient. See *Commonwealth* v. *Kelleher*, 18 Mass. App. Ct. 981 (1984). A majority of the court believes that the error cannot be deemed to be harmless beyond a reasonable doubt. We therefore reverse the order denying the motion for a new trial.

We summarize the evidence most favorable to the Commonwealth. At approximately 3:30 A.M. on September 15, 1971, victim A was awakened in the bedroom of her first-floor apartment by the defendant, who was "half sitting" on her bed. Her boy friend lay asleep in the living room, and her roommate, victim B, slept in another bedroom. The defendant placed his hand over victim A's mouth, pressed an object which he said was a knife to her neck, and told victim A to cooperate. He then raped her for what "seemed like an eternity." After approximately two hours, he searched victim A's room for money while his accomplice, "Arthur,"[2] raped victim A. The defendant then moved on to victim B's bedroom, where he woke the sleeping occupant, covered her mouth, put a sharp object to her neck, and raped her.

---

[1] He was sentenced to a term of twenty-one to thirty-five years at the Massachusetts Correctional Institution at Walpole (now Cedar Junction), on one of the convictions of armed robbery, and to concurrent terms of the same length on the remaining charges. The sentences were to take effect forthwith notwithstanding a house of correction sentence then being served. See G. L. c. 279, § 27. A pro se motion for claim of appeal and a motion for appointment of counsel were filed in 1973. The docket reflects no action on these motions. In January, 1983, the defendant filed a motion for relief from unlawful restraint and counsel was appointed for him. In June, 1983, a motion for a new trial was filed by counsel. A Superior Court judge was assigned to hear the motion because the trial judge had retired. On September 30, 1983, the motion was denied and on October 4, 1983, an appeal from the denial of the motion for a new trial was filed. The case was entered in the Appeals Court in January, 1984.

[2] The defendant was tried jointly with Arthur J. O'Loughlin. No issue regarding the codefendant is before us.

At about 6:15 A.M., victim A entered victim B's bedroom. She told the defendant that "Arthur" wished to leave. The defendant nonetheless continued to rape victim B. Finally, asking whether there was any cash about, he removed thirty dollars from an end table drawer, instructed victim A and victim B to lie face down on the bed, and left the apartment with his accomplice at approximately 6:30 A.M.

Hearing a car start and drive away, victim B rose, woke victim A's boy friend, and told him what had taken place. The boy friend phoned the Somerville police at 6:37 A.M. The police arrived very shortly thereafter. Each victim provided the police with a detailed description of one intruder, and each description included mention of an unusual dungaree jacket worn by that assailant.

That afternoon victim B picked out two photographs of the defendant from an array; victim A later picked out the same two photographs as depicting the first person to rape her. On September 18, 1971, victim B identified the defendant at the Somerville District Court. She was shown a jacket that had been taken from the defendant after his arrest on September 17, 1971, which she identified as the jacket worn by her assailant. She was sure it was the same jacket "[b]ecause of the star, the stars on the side." Victim A subsequently made a similar identification of the defendant at the District Court.[3]

Trial took place from October 30 through November 3, 1972. Defense counsel did not contest the fact of the rapes and robberies. The only issue was the identity of the assailants, and the defense, that of alibi. Witnesses for the defendant suggested that on September 14, 1971, several friends had gathered for a party at the defendant's home; that the defendant had drunk beer and used narcotics; that he had passed out and was seen sleeping on his bed at midnight; and that his sister woke him the next morning at 6:15 A.M., finding him fully dressed.[4]

---

[3] The record does not reflect any questions directed toward victim A as to whether she could identify the jacket. She did not identify the jacket at trial.

[4] Other evidence emerging at trial included testimony that Arthur O'Loughlin's palm print and fingerprint were found on a table and a bamboo

The case was submitted to the jury in the late afternoon of November 3, 1972. The jury returned their verdicts that same day. The defendant did not appeal from the judgments. See note 1, *supra*. On June 2, 1983, the defendant filed an amended motion for a new trial together with supporting affidavits. He contended that he had been denied a fair trial on the grounds, that: (1) the judge's instructions to the jury trivialized the standard of proof required; and (2) he had been kept in shackles at trial, in front of the jury, over his objection.[5] A hearing was held on the motion on September 12, 1983. The motion was denied on September 30, 1983. The motion judge ruled that the trial judge's charge as a whole passed constitutional muster. The judge further held that the shackling of the defendant throughout the trial had not denied him a fair trial.

The defendant appealed. The Appeals Court, concluding that the charge on reasonable doubt was inadequate, reversed the order denying the motion for a new trial. *Commonwealth v. Kelleher*, 18 Mass. App. Ct. 981 (1984). We granted the Commonwealth's application for further appellate review.

The relevant portion of the judge's charge appears in the margin.[6] The defendant argues quite simply that the charge on

pole in the victims' apartment. The defendant's mother, moreover, identified the denim jacket as belonging to her son.

[5] The defendant asserted as a third basis of error "that the judge's charge on identification had the effect of shifting the burden of proof from the Commonwealth to the defendant," in violation of the principles of *Sandstrom v. Montana*, 442 U.S. 510 (1979). The specific language in the charge to which the defendant assigned error was: "The issue here as argued by counsel primarily on the issue of identification is quite apparent. If the jury find that it was not Kelleher, of course their duty is to return a verdict of not guilty." The motion judge ruled that there was no error. She "fail[ed] to see where the wording of the judge shifted the burden or created a presumption in favor of the Commonwealth." The defendant does not raise or argue this issue on appeal. It is therefore deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[6] "The Commonwealth has the burden of proving every essential element of the crimes charged beyond a reasonable doubt.

"    .    .    .    .

"Now, what do we mean by proof beyond a reasonable doubt? Well, I will try to be brief. The emphasis is on the word reasonable. It does not

reasonable doubt in this action is indistinguishable from that in *Commonwealth* v. *Rembiszewski*, 391 Mass. 123 (1984); that the charge is therefore infirm; and that the denial of the motion for a new trial was erroneous. We agree that here the instructions on the standard of proof were inadequate.

The Commonwealth maintains at the outset that the tardiness of the defendant's appeal militates against review of this issue. We disagree. "We have excused the failure to raise a constitutional issue at trial or on direct appeal when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case." *Commonwealth* v. *Rembiszewski, supra* at 126. Here, the defendant's challenge of the jury charge is founded on principles first enunciated, after the defendant's trial, in *Commonwealth* v. *Bumpus*, 362 Mass. 672 (1972), judgment vacated and case remanded on other grounds, 411

---

mean beyond any doubt. If it did, we'd use those words; we'd say proof beyond any doubt. It doesn't mean proof to a mathematical certainty. If it meant that, we'd say so.

"We sometimes say it means proof to a moral certainty. Possibly the best way to explain what we mean by proof to a moral certainty is to say that when a juror has decided that the Commonwealth has sustained the burden that is on it of proving every essential element of the crime charged beyond a reasonable doubt, and has returned a verdict of guilty, that juror goes home at night with his mind at rest as he knows he has done the right thing, there is no gnawing doubt based on reason in his mind.

"Again I say, proof beyond a reasonable doubt means proof associated with reason, having a reasonable basis. Possibly one of the best ways of examining the meaning of the phrase, proof beyond a reasonable doubt, is to compare the state of mind of a juror who has been convinced beyond a reasonable doubt of a defendant's guilt, and the state of mind of that same juror after that juror has made an important decision in his own life. And I stress the word important. I don't mean routine decisions we all have to make, but I mean those once-in-a-while decisions that most of us have to make in the course of our lives that may alter our entire futures. Homely illustrations are the choice of a vocation, decision whether to marry or not, decision whether to try to own one's own home, decision whether to undergo surgery or permit someone in our care to undergo surgery. In the lives of ordinary people these are important decisions, and a sensible person does not make a decision on such an issue without careful consideration of both sides of the case. Having arrived at a decision on such an issue, it may be said that person is one free of reasonable doubts."

U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974), reviewed on petition for writ of habeas corpus sub nom. *Bumpus* v. *Gunter*, 452 F. Supp. 1060 (D. Mass. 1978), denial of writ aff'd, 635 F.2d 907 (1st Cir. 1980), cert. denied, 450 U.S. 1003 (1981). The defendant's failure to challenge previously the adequacy of the judge's charge on reasonable doubt should not preclude him from doing so now.

The crux of the charge was that the state of mind of a juror who has been convinced beyond a reasonable doubt was comparable to "the state of mind of that same juror after that juror has made an important decision in his own life. . . . Homely illustrations are the choice of a vocation, decision whether to marry or not, decision whether to try to own one's own home, decision whether to undergo surgery or permit someone in our care to undergo surgery." "The judge's use of examples of decisions in the personal lives of the jurors detracted from the seriousness of the issue before them. . . . Equating the proof that the jurors might have wanted in making decisions with respect to their personal affairs with the degree of certitude necessary to convict the defendant tended to reduce the standard of proof from the criminal standard of proof beyond a reasonable doubt to the standard in civil cases, proof by a fair preponderance of the evidence." *Commonwealth* v. *Rembiszewski, supra* at 130-131.

The Commonwealth proffers several unpersuasive distinctions between the instant charge and that in *Rembiszewski*. We conclude that those distinctions are insignificant. The judge's allusion to "proof to a moral certainty" did not suffice to repair the defective instructions as to reasonable doubt. The judge's iteration that the burden of proving beyond a reasonable doubt each element of the crime charged lay on the Commonwealth did nothing to convey the weight of that burden. That the judge stressed the presumption of the defendant's innocence did not inform the jury of the standard of proof required to overcome that presumption. Nor do we perceive any significance in the fact that the judge's language in instructing the jury on the meaning of reasonable doubt was hortatory ("it may be said that person is one free of reasonable doubts") rather than man-

datory. "It is clear in this case that the jury were instructed to treat proof beyond a reasonable doubt, proof to a moral certainty, and proof to a degree of certainty that the jurors would want in making decisions about their futures as equivalent concepts. This was constitutional error . . . ." *Commonwealth* v. *Rembiszewski, supra* at 134.[7]

We next consider whether the error in the present case is harmless beyond a reasonable doubt. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 441 (1980). The defendant asserts that, because "[t]he case against the defendant was one of eyewitness identification solely, and he presented alibi witnesses whose credibility was critical to his defense," the error in the charge cannot possibly be held harmless. He argues that, because "[t]he reasonable doubt standard is most crucial in cases where central facts (such as identity, or the occurrence of an event) are at issue, and credibility plays a key role," *id.*, a new trial is mandated here. A majority of the court agrees.

The strength of the Commonwealth's evidence turns on the credibility of the victims. The defendant offered alibi evidence suggesting that he could not have been in the victims' apartment at the time the crimes were committed. The victims were not previously acquainted with the defendant. In such circumstances, we are unable to measure the impact of the error in the part of the charge relating to burden of proof. While a reading of the transcript shows that identification of the defendant by the victims was very strong,[8] "we cannot assume that our

---

[7] In reviewing jury charges such as that in the instant case, we are guided by Federal constitutional precedent such as *In re Winship*, 397 U.S. 358 (1970), and *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975). See *Sandstrom* v. *Montana*, 442 U.S. 510 (1979) (impermissible shift of burden of proof in jury instructions is Federal constitutional error). Accord *Francis* v. *Franklin*, 471 U.S. 307 (1985). See also *Commonwealth* v. *Hughes*, 380 Mass. 596, 602-604 (1980).

The Commonwealth has not challenged our interpretation of Federal law. That issue therefore is deemed waived. Mass. R. A. P. 16 (a) (4); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22 (1980), cert. denied, 451 U.S. 973 (1981). Thus we do not discuss this issue under the State Constitution or under common law.

[8] Detracting from the strength of the identification of the defendant is the fact that victim A was not asked to identify the defendant's jacket at trial. Neither victim observed the tattoos on Kelleher's arms.

view of the credibility of the victim[s] would be the same as that of the jurors." *Commonwealth* v. *Wood*, 380 Mass. 545, 550 (1980).[9]

The judge's order denying the motion for a new trial is reversed. The judgments are reversed, the verdicts set aside, and the case is remanded for a new trial.

*So ordered.*

LIACOS, J. (concurring). I join in the court's conclusion that the judge's charge as to the meaning of proof beyond a reasonable doubt was "inadequate," *ante* at 825, and that "[t]he judge's iteration that the burden of proving beyond a reasonable doubt each element of the crime charged lay on the Commonwealth did nothing to convey the weight of that burden." *Ante* at 826. I agree also with the court's conclusion that the defendant has a right to have this issue reviewed. Additionally, I join in the court's decision that the error is not harmless beyond a reasonable doubt under the standards set forth in *Commonwealth* v. *Garcia*, 379 Mass. 422, 441-442 (1980).

I write separately, however, to reiterate my view that failure by a judge properly to instruct the jury on the elements of the crime charged, and the standard of the government's burden of proof, deprives the defendant of his right to a fair trial apart from a showing of actual prejudice. I need not restate my reasons, as they are set forth in my dissents in *Commonwealth* v. *Garcia, supra* at 445-446, and *Commonwealth* v. *Hughes*, 380 Mass. 596, 604 (1980). Defects in a charge which pertain to the elements of the crime and the meaning of proof beyond a reasonable doubt are prejudicial per se and require a new trial.

---

[9] Although a motion to suppress identification testimony was denied at trial, the correctness of that ruling was not challenged at the hearing on the motion for a new trial or now on appeal. Because the failure to brief issues is deemed a waiver, we accept the trial court's determination that the identifications were free from constitutional taint. Mass. R. A. P. 16 (a) (4).